Good afternoon, ladies and gentlemen. We have five cases on our calendar this afternoon, three patent cases and two government employee cases, and the latter of the employee cases is submitted on the briefs and will not be argued. The first case is Boler Company v. Tuthill Corporation, 06-15-10. Mr. Pequino? Pequino, yes. Pequino. May it please the court. My name is Matt Pequino, counsel for the Boler Company, the appellant in this case. As an initial matter, I just want to point out that although I recognize there are quite a number of claim terms that we have brought up as pertinent to this appeal, because of time constraints here, I'm going to limit the discussion to the construction of the term cradle or cradle member, principally because this is the only term on which Boler concedes non-infringement. That said, the principal issue before this court today is whether the public patent record, that is, the specification of prosecution history, has put the person with ordinary skill in the art on clear and unambiguous notice that the ordinary meaning of the language of the independent claims 1, 9, and 22 should be ignored in favor of more restrictive meanings corresponding to the nature of the claim. The specific embodiments of friend brackets contained and described in the specification. Mr. Pequino, before you go any further, could I just get some factual information from you? Absolutely. On page 12 of the red brief and on page 543 and 546 of the appendix are depictions of what purport to be the accused device. Are those, in your view, accurate depictions of the device that's at issue in this case? Page 12 in the red brief and page right at the end of the appendix, 543 and 546. In 546, it's the device in front of the accused device. And on 543, it's the three depictions of the same thing. Referring to page 543 as well, those appear to be accurate depictions of the accused device, at least in 543. And page 12 of the red brief, it's a little easier to see there what's going on. It's the colored pictures that are in your opponent's brief. Oh, well, actually, Mr. Kopp has a copy for you here. No, I've got it. Just taking a minute to look at it. This appears to be the same friend bracket. And that is the accused device? Correct. Okay, fine. I believe so. Getting back here. What Bowler's contention here is that the district court committed error by construing the claim term cradle, which is recited in all of the independent claims in this case, is having a claim scope which is wholly preclusive of welds in instruction, which is also completely preclusive of welds in connecting the cradle to the elongated plate. But you left out the preamble, which contains substantially weld-free frame. And that's a rather important part of this appeal, I would think. Correct. I mean, the preamble is present in Claims 1 and 9, admittedly. The prosecution history amongst those two claims is a little bit different. Claim 22 does not contain that preamble at all. For that reason, at least, Claim 22 has no expressive language which relates to welds whatsoever. If you go back to Claim 1, though, and the meaning of substantially weld-free as it potentially relates to cradle, Bowler's position is not that this particular claim limitation is specifically directed to the cradle, but is directed to the frame bracket as a whole. And what we're not trying to argue, specifically, at least as to Claim 1, is that there's no limitation on the quantity of welds allowed in the frame bracket. What we are saying is that there's no specific limitation on where those welds are allowed to appear in the frame bracket, as long as the total quantity of welds in the frame bracket does not exceed the total quantity, which equals the definition of substantially weld-free. What role do you think the language on Column 5, between Lines 30 and 37, plays in establishing a definition of the term substantially weld-free? Well, I know, for example, that that particular passage of the patent was pointed out by the prosecuting attorney as something akin to defining the meaning of the term substantially weld-free. Certainly, Tudhill is taking the position that that particular passage is defining substantially weld-free as having a meaning related to location, which restricts the location of permissible welds. But just looking at the ordinary meaning of substantially weld-free, which I think everybody would accept here relates to a weld quantity, and if you look at this passage and read the entire passage, what it says is that the welds that are listed in this passage fall within the scope of, or, I'm sorry, constitute a minor amount of welding, and that this substantially weld-free limitation contemplates and includes within it this minor weldment. And not much else. And not much... No, I'm not quoting, I'm just... That is not our position. I'm interpreting it. No, no, I understand your question. I don't see substantially weld-free as being limited to a minor amount of weldment. That's not what it says here. What this says is that substantially weld-free contemplates and includes a minor amount of weldment within its scope. Substantially weld-free is the outer bounds of that quantitative definition. A minor amount of weldment certainly falls within that scope. But I don't see those terms being... The passage that you're commenting on and that Judge Bryson referred you to says, when arm 51 is employed, it may be welded. This, it is to be noted, is the only weld if employed in the bracket assembly, except for use of welds in lower bushing. And then we get to what you were referring to. The term substantially weld-free contemplates and includes within it this minor weldment. In other words, not much else. Correct. The most important point here is that this embodiment, which actually comprises almost the entire specification, this embodiment is a caster-adjustable version of this frame bracket, which is nowhere really at issue in this case. The difference between a caster-adjustable version and a non-caster-adjustable frame bracket is that in the caster-adjustable version, the cradle itself can't be fixed in location with respect to the elongated plate. It has to be able to pivot back and forth with respect to the elongated plate. Are you suggesting then that this language on column 5 is limited to the first embodiment? It doesn't include... It's only discussing that embodiment, but in the broader context of the introduction to these passages, which call this just that embodiment, which we equate as an example. Are you saying that the term substantially weld-free, to the extent that it is defined by the language that Judge Luria was just reading, does not apply to the use of the term substantially weld-free in all of the embodiments of Claim 1? I think if everyone accepts that substantially weld-free... I want to make sure I understand your answer, so that's either yes or no. I guess I have a conditional... Can you repeat the question? Do you think that that definitional language, if we can call it definitional, applies only to one embodiment, the embodiment that's being discussed at that point in the spec, or do you think it applies to all embodiments of Claim 1, which uses the words substantially weld-free? I think that to the extent it means that it includes a minor amount of weldment, that it's being construed to include a weld quantity, that that is the case. You mentioned earlier the cradle member, and at page 28 of your brief, the blue brief, specifically you quote the district court, you say the district court construed the terms generally U-shaped cradle member and cradle member as defining structures which are distinct single pieces containing or that contain no welds. Now, as I understand it, in reading your brief, you take issue with the district court's construction of the cradle member as having to be a distinct, stand-alone piece with two legs. Is that correct? Well, I've recognized recently that different people interpret that particular claim construction in different ways. I've discussed this with people who are construing that as meaning that it's a distinct piece from the elongated plate, but there's another potential construction, and it's not really clear from the opinion in my mind. How do you say, because in reading your briefs, and correct me if I'm wrong, I understood you to be arguing that the sense I got from your brief was that you were saying it was wrong to construe the cradle member as requiring that it have a distinct, U-shaped, stand-alone form. Generally speaking, that's correct. That the district court made a mistake in construing the cradle to have to be a unitary piece that is wholly explicit of the world. Basically, it would end up having to be a flat piece of steel, for example, that's bent into the U-shaped structure. Well, let me ask you, if one agrees with the district court's construction, in other words, if one concludes that the cradle member has to be a distinct, stand-alone piece or member, do you lose? With respect, well, I mean, the reason we conceded non-infringement in this case is we believed that we would lose, but it's a little bit different here because we're pointing out that, despite the fact that that construction applies to, we don't agree that it applies to one, but arguably, because Claim 22 is so different and contains no limitation, which even mentions the word, though, that... It says cradle member, though. It does say cradle member. The question then becomes, then, did the prosecution history and the specification, is there some sort of unmistakable record, is there some sort of unmistakable indication in that public record that the patentee intended to define the cradle as being, you know, as being unitary in nature? Okay, and if we say, if we agree with you, you say it would have to go back. If we agree with the district court, then you would lose. If you agree with respect to all claims, absolutely. Would you like to save the remaining time for a bottle? Yeah, I'm sorry. If I can save the remaining time for a bottle, that would be great. Thank you very much. May it please the court. Mr. Fechner. Mr. Sullivan. Judge Schall, just to answer your question, if I may, from our perspective, in the appendix at page 320 is the amendment that was put in by the patentee where they say, it is clear from the specification that applicants consider their cradle mechanism to be, and from the priority to see that it is a unique structure. And from the specification, they go on and on in every embodiment and every description as describing it as a unitary U-shaped structure, often without walls. Judge Warren, you wrote in the Phillips case having to do with the limitations that they're talking about, or at least I believe they're talking about with respect to embodiments, preferred and otherwise, you said at 1328 of that decision, claims need not, and I recognize this was a concurrent decision, but claims need not necessarily be limited. It didn't get a lot of votes. Well, this part of it did. You were fine with this part, Your Honor. Claims need not necessarily be limited to specific or preferred embodiments in the specification, although they are limited to what is contained in the overall disclosure of the specification. And what we have here, Your Honors, is a situation where they have a very specific specification, a number of embodiments, a number of descriptions, and yet now they want to reach beyond the specifications, way beyond the specifications, to try to bring into the patent those items which were, we believe, disclaimed. And Judge Bryson, on the substantially well-free, again, on the page before with respect to the amendment that was submitted, page 319 of the joint appendix, again, the applicant at that time said with respect to claim one is amended above the potentially confusing term non-welded has been eliminated. First, it is not needed for patentability. Second, the preamble of claim one includes the more appropriate term substantially weld-free as defined in the specification at page 11. And at page 11 of the specification as it became final, specifically to those very lines that you were discussing, Judge Bryson, column 9. Mine's 30 through 39. Thank you very much. Column 5, right? Thank you. But then it goes on in the same paragraph. The applicant says, finally, removing this term avoids improper interpretation and thus confusion. Yeah, a lot of confusion has been lifted, I guess. Given the allowed for weld to secure 2.38 elects 45 and 47 or cradle 39 if desired as described in the specification. That's what they determined. That's what they told the public. That's what they told the patent office that non- or excuse me, substantially weld-free meant. Now they want it to mean something else. What about claim 22 that doesn't have the language substantially weld-free? Claim 22, Your Honor, we believe was submitted so that the invention might be used in place on trucks. And claim 22 certainly is circumscribed by the introduction to the patent. If I could have that one, please. It talks throughout about there being substantially weld-free. And the only purpose of this patent, or the primary purpose, I should say, is to produce an invention that would get around or get beyond the problems that had occurred in the arts with respect to welds, both with respect to expense and with respect to the weakness of the welds. Claim 22 also talks about or requires that there be a bolt that is used in order to attach the cradle to the elongated member. So no, there is not a mention of substantially weld-free because of the use of that invention as described in claim 22. We believe that it was unnecessary at that point, but certainly the circumscription was necessary. Unnecessary. Let me make sure I understand just what you're saying. Are you saying that we should read in a limitation of substantially weld-free, or are you saying there are other grounds on which the trial court's judgment can be sustained without the need to read in the limitation of substantially weld-free? The former or the latter? I believe the former, Your Honor, given the description and the specification. So you think that the specification is so clearly limits the invention to something that is substantially weld-free in all of its embodiments and in all of the various claims that would come within the scope of what's disclosed in the written description, that we really are compelled to read that term in, even though it's rather conspicuous by its absence in Claim 22 as opposed to all the other claims where it does show up in just those terms? We believe that that is appropriate, Your Honor, and I understand that it may be conspicuous in its absence, but perhaps not in its context. But when one looks at the background of the invention and the reason for the invention, there would be no reason otherwise than to do that. Well, the invention, the written description does describe some other purposes for the invention, such as not having the fixed height problem that the L-shaped device, the glove-shaped device has that is provided by having just a plate through which bolts can be extended, or alternatively, I suppose, welds could be used. You would serve that purpose, it seems to me, equally well, whether you had a welded or non-welded system, wouldn't you? That may be so, Your Honor. However, we believe that the case law, including Phillips and other cases of this sort, would demonstrate that when a primary purpose, such as substantially weld-free, is used in the introduction, in the purpose, in the specification, and throughout the embodiments, in every single instance, that that in itself is a description and an illumination as to what the claim meaning is. You think the summary of the invention that says this invention fulfills the above-described needs by providing the substantially weld-free frame-bracket pretty much applies to all the claims? Thank you, Your Honor. I do. I was looking for that, and I appreciate that. Thank you. I suppose you could also invoke the title of the patent. The title? The title of the patent, substantially weld-free. We believe that everything in the specification, everything in the claims from beginning to end, demonstrates that the primary purpose of this device is to be substantially weld-free for a number of commercial reasons. Let's assume for a moment that we are conclude contrary to your submission that we really can't read that term into Claim 22. How would we resolve this case in your favor looking with respect to Claim 22 in your view? I think this sort of carries us into the second part of your answer earlier to my question, i.e., you were talking about the bolt and the role of the bolt and so forth. How does that play out if we take substantially weld-free limitation away from Claim 22? I presume that in that instance that other means of attaching could be used, although it would be very difficult in our view given the difficulty with welding that they described earlier. I'm not sure that I can easily answer your question, Your Honor. Let me ask you this question. Do you view the final limitation of Claim 22, the bolt means extending through said aligned orifices for connecting said cradle member as a means plus function claim? Do you see that as being in means plus function form? We do. Uh-huh. And would there be any express structure in the written description or its equivalent that would cover welded connections? We are not aware of any express structure or equivalent that would fall within. Okay. Scott, one of the things, what about earlier, I would have thought that in response to your question, you might have raised the unitary cradle member argument that you had earlier. With respect to Claim 22? Yes. Okay. And certainly a unitary cradle member must be, we believe, a part of Claim 22. Perhaps I misunderstood the question, but we believe that there must be a unitary cradle member. And though they do not use elongated, they certainly use plate member, and that those must be attached in some way using a bolt. Therefore, it seems to us that substantially weld free makes a lot of sense. The accused device would not have, I suppose you would say the accused device would not have a unitary plate member. Is that correct? Leaving aside welding or bolting. The accused device, there is no U-shape until the welding occurs, if that's what you mean to ask. In other words, to get to a cradle, as it's shown in the patent, if you look at page 12 of the red brief, you kind of borrow the second leg from the plate member, correct? I don't know if it's borrowing, but certainly that is the other leg of a U-shape. In other words, if there's no attachment, there's no unitary cradle member, right? That is absolutely correct, yes. I wanted to raise, by the way, Judge Bryson, just so that you're clear, you asked a question about page 544, I believe it is, of this photograph. I just want to be sure of the appendix. One of them is the accused, the other is the commercial embodiment of the patent. That's correct. Yeah, I understood that. Good, thank you. This is, by the way, I take it, the embodiment, or the accused device, period? Period. This is not just one embodiment of the accused device? It's the only embodiment that we're aware of. All right. And in order then to find that this is a cradle, then you have to, this surface here, assuming it's a plate, has to do double duty as both the plate and the second leg of the cradle, correct? It is absolutely doing that. And with substantial welds all over. Okay, but setting aside the weld, I'm really still asking really whether claim 22 can be looked at without any reference to welds. It is clearly not a planetary device, that is a U-shaped cradle. It is two devices that come together to eventually form a U-shaped through welds. Okay, thanks. If there are no other questions, thank you very much. Thank you, Mr. Copp. Mr. Pecineau has a couple of minutes, a few minutes.    fact that in the prosecution history, the cradle was described as unique. We certainly don't know if that's true, but we do know that the cradle was described as unique. We really don't believe that's part of the record. I think it's important to look at the context though in which the cradle was described as unique. In that particular office action, two patents were cited against the claims. One of those was the Vandenberg patent and one of them was Riddell. Neither one of those patents, or at least the structures were cited, neither of those structures being cited by the examiner had anything to do with comprising a frame bracket at all, let alone a cradle frame bracket. Even if they did, none of those structures contained walls. One of them happens to be something akin to like an I-beam which extends across the width of the truck. The other one just happens to be a U-bolt which is connecting I believe some sort of spring to an axle or something like that. The fact that it was described as unique, that the cradle was described as unique in some way and not whatsoever with distinguishing the claim term cradle as being without walls and it's precisely because there was no reason to make that distinction. All that was pointed out was that that cradle in combination with the elongated plate together they comprise a new structure, a more simple frame bracket that happens to be inventive and that's it. If I may Judge Shull, Mr. Sullivan pointed out that I may have misunderstood the question of yours. Probably a confusing question. He brought up the issue of what I agreed to with respect to whether or not you were talking about I think unitary versus separate. The unitary cradle member. In other words I think Mr. Cobb makes the argument he says look let's leave aside the bolt weld issue. He would say there is not that the patent requires a unitary separate standalone cradle member. In other words off to the side with a new shape. And that this does not exist in the accused device. I think if the claim were construed to specifically have to be unitary a specific exclusion principle would foreclose the doctrine if that's what you were getting at. Could I ask one more question? Do you agree with Mr. Cobb now turning to claim 22 the last limitation the bolt means for connecting do you agree with Mr. Cobb that's in means plus function format and governed by means plus function structure. I think it's not in means plus function structure. I think when someone  word means and follows it with function the presumption of course is that it's means plus function but it's not in means plus function. So in this particular instance there's a very specific structure aside. If you look at the specification you'll see bolts listed. So in effect pencil means for writing is just a patent lawyer's way of saying pencil. In this particular instance I believe that's the answer. Okay. That's fine. Thank you. You're very welcome. Thank you Mr. Peckinall.